UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

AARON DURALL, et al,

Defendants.

Case No.
3:20-CR-86-TJC-JBT

## RENEWED MOTION FOR A BILL OF PARTICULARS

### INTRODUCTION

Defendant, Aaron Durall, previously requested that the Court direct the government to provide a Bill of Particulars to elucidate the actual fraudulent conduct – false statements – that the government alleges are the core allegations of fraud in this case (Doc. 213). At oral argument on the motions in April, the Court indicated[1] that the indictment provided sufficient information and pointed out, in particular, Paragraph 37(j) of the indictment, which alleges that the fraud was accomplished in the following matter:

> It was further a part of the conspiracy that JORGE PEREZ, RICARDO PEREZ, SETH GUTERMAN, AARON DURALL, JAMES PORTER, CHRISTIAN FLETCHER, NEISHA ZAFFUTO, AARON ALONZO, and NESTOR ROJAS would and did cause false and fraudulent claims for reimbursement of the aforementioned screening and confirmatory U A test and blood tests to be submitted to the Private Insurers and other private payors using the NPI and other identifying information for the

---

[1] (Transcript of April 27, 2021, pages 97, 101).

> Rural Hospitals, as though the testing was reimbursable under the Rural Hospitals' insurance contracts with the Private Insurers and other third-party payors, when in truth and in fact, it was not.

Since the Motion for Bill of Particulars was filed, the defense has reviewed hundreds of thousands of pages of discovery, reviewed the grand jury testimony of several witnesses, and conversed with the prosecutors in this case. Yet, the specifics of the government's allegations in this case remain elusive and shifting. The defense urges the court, again, to require the government to identify the fraudulent misrepresentation (or omission) that represents the *actus reus* of the offense. If there is no fraudulent misrepresentation, the government should be required to declare whether the allegation is simply that the defendants submitted claims for a non-reimbursable expense.

## THE BACKGROUND OF THE OFFENSE

The basic premise of the government's case is clear: The rural hospitals filed claims seeking reimbursement for laboratory testing to which they were not entitled. The reason the claims were not valid is due, according to the government, to the supposed limitations (albeit implicit, not explicit) in the contract between the private insurers and the hospital.[2] The actual language in each contract is far from clear

---

[2] By way of example, the government claims that the hospitals were not permitted to engage in "pass-through" billing, which is a process by which the hospital would use another entity to perform a certain procedure (such as a laboratory test) and then pass the cost of the laboratory bill on to the insurance company as part of the hospital's bill. The private insurers have acknowledged in their internal emails that "pass through billing" was not prohibited by the contracts. (*See* Exhibit "B"). Yet, the government apparently takes the position (though our request for a Bill of Particulars

(even the government's expert acknowledged that no insurer can spell out every statement or action on the part of the provider that would be fraudulent or non-reimbursable. (Expert Report of Dr. Kongstvedt, page 23).

Certain facts are undisputed:

1. Chestatee Hospital would send to its billing company (Medivance), information about laboratory tests for which it seeks insurance reimbursement on a UB-04 form (See sample UB-04 form in Exhibit "A").

2. The billing company would prepare and submit electronically the information regarding the claim to a clearinghouse. The form does *not* say where the actual laboratory test was conducted, but it does expressly state that the urine was obtained from a "non-patient" (this is communicated by the use of the "141" code (this is in the "type of bill" Box 4 on the UB-04 form – Exhibit "A") Nowhere on the form does the hospital / billing company, state that the urine was obtained from a person who was present at the hospital. Nowhere on the form does the hospital or billing company state where the laboratory test occurred. The form *does* identify the hospital's NPI number (i.e., the identifying information for the hospital that is seeking reimbursement in UB-04 Form, Box 56). Box 56 does not say where the test was performed, or

---

specifically seeks an answer to this question) that pass through billing is prohibited by the contracts.

3

whether the test was performed on a person's urine without the person being present. The 141 code answers that question: the person is a non-patient and therefore, presumably not present at the hospital at any time.

In short, there is nothing "false" in any of the information that is included on the UB-04 form.

3. The billing company then submits the form to a clearinghouse via an 837i form. The clearinghouse is an entity that collects UB-04 forms/EDI data from many hospitals and other providers and then transmits the information in a different format either directly to the private insurer, or through other intermediary clearinghouses. Eventually the information is received by the private insurance company which "scrubs" the data and using its own computer system, determines the eligibility and reimbursement rate for the claim.

4. At some point, either one of the clearinghouses, or the private insurer itself adds another code to the data it received. This additional code (and other information) is on the private insurers' internal document and is *not* the same information that the rural hospital inserts on the UB-04 form, or that the billing company places on the 837i data transmission. This new code is the "22-code" which – in this case – conveys *false* information. The 22-code identifies the patient as someone who actually was at the hospital having his/her urine

4

tested. This is not correct. The patient was not at the hospital. And the hospitals never reported on any form or document that the patient was at the hospital, either directly, indirectly, or via any code. On the contrary, the only information the hospital provided about the person whose urine was tested was that he/she was a "non-patient" – the 141-code on the UB-04 form. The 141 code is accurate and that is what the defendants in this case submitted to the private insurers. The 22-code is inaccurate and that is what the private insurers added to their own internal spreadsheet, a spreadsheet that was then sent to the government.

The government is aware that Chestatee Hospital did, in fact, seek reimbursement for performing laboratory testing of urine samples at the hospital (the government and the defense apparently disagree about the number of tests that the hospital performed at the hospital). There is no dispute, however, that the person whose urine was tested did not physically ever appear at the hospital. There is also no dispute that the person whose urine was tested was a non-patient.

There is no allegation – and no document furnished to the defense in discovery – that the hospital *ever* claimed either expressly, or implicitly, that the person whose urine was tested personally appeared at the hospital. In fact, the *only* representation made by the hospital was this: the urine was tested (the claim form does *not* say

5

where the test occurred) and the urine was from a *nonpatient* (the 141-code in Box 4) of the UB-04 form.

At various times and places, both in pleadings, in the grand jury testimony, in conversations with the defense and in the private insurers' internal emails, the government's basic allegation was (1) the 22-code was "the lie" (in pre-indictment meetings it was stated by the AUSA's in the case that the 22-code was the big lie, and witnesses at the grand jury referred to the 22-code); (2) the 141-code was "the lie" (during additional meet and confer sessions and by the government's expert); (3) the claim was "the lie" because a non-patient whose urine was tested at a private laboratory is not reimbursable (government's response to initial request for a Bill of Particulars); (4) the claim was "the lie" because a non-patient whose urine was tested at the hospital is not reimbursable (the AUSA stated this during most recent meet and confer). This request for a Bill of Particulars seeks a definitive answer regarding the specifics of the allegation. Which of the four theories (one or more) is the government claiming is the basis for this prosecution?

The defense requests for a bill of particulars, therefore, are these:

1. Is the government claiming that a particular item on a claim form (UB-04) that the hospital or billing company submitted is false? If so, what is the false item? The defense acknowledges that the entity claiming the reimbursement is the hospital (that is the NPI number that is included on the form in Box 56).

That is not a false statement. It is, in fact, the hospital that is submitting the claim. So there is nothing false about that entry. That "box" on the form does not ask, "Who performed the test or service?" That box simply inquires, "Who is submitting the claim?" Nevertheless, if the government claims that including the hospital NPI in Box 56 is the fraudulent misrepresentation, it should say so.

2. The hospital never stated that the person whose urine was tested was personally at the hospital. That inaccurate information (the "22" code) was placed on an internal insurance company document *by the insurance company* – not the hospital or the hospital's billing company (this is the focus of the FRE 104 motion filed contemporaneously with this motion). It is apparent to the defense that the government at least initially relied on what it believed was the hospital's deceptive use of the "22" code on the claim form and this erroneous information was conveyed to the grand jury and to defense counsel during pre-indictment discussions with the government. For example, on June 5, 2019, AETNA representative Theresa Jackson testified before the Grand Jury about the claims submitted by the defendants in this case. Among other things, Ms. Jackson testified that *the defendants* included a "22" place of service code in the claims submitted to AETNA, and that the "22" place of service code is an indication to AETNA that the patient "walked into the

7

hospital, had a service done, and at some point you left on the same day." See Grand Jury Testimony of Theresa Jackson at 10.  The case agent provided similarly inaccurate information: Specifically, AUSA Duva questioned Special Agent Schwinger about the "22" place of service code, and Special Agent Schwinger testified that "the claims we saw had 22, outpatient, but also 141 on the same claim." See Grand Jury Testimony of Special Agent Robert Schwinger at 44-45. Special Agent Schwinger went on to testify under questioning that if the claims billed had shown that there was no connection to the hospital (meaning, if there was no "22" place of service code on the claims), the claims would "potentially not [be paid] at all." Id. at 45-46. (GJ Transcripts attached Exhibit "C").  The government's presentation to the grand jury was unmistakable: the lie – the fraud – was the representation that the "place of service" was the hospital when, in fact, the place of service was at the independent laboratory. Now, however, there is no question that the "place of service" designation was actually placed on the internal private insurer spreadsheet provided to the government *by the private insurers themselves*, not by the hospitals or the billing entities. The private insurers lied to themselves by placing the 22-code on the claims *after* the claims were received by the private insurers.

3. If the government is going to argue at trial that the claim is false *because* the person did not appear at the hospital, even if his urine *was tested at the hospital laboratory* and even though the hospital correctly identified the person as a "non-patient," it should say so. The discovery reviewed by the defense includes statements by private insurer representatives and investigators that if the urine *was* tested at the hospital, the claim is reimbursable.

4. If the government's theory is that *no* false statement was made by the rural hospital or the billing company (and there was no material omission), but the claim was for a service that was not reimbursable solely because the person never was at the hospital (and the claim "implied" somehow, that the person was at the hospital), the government should be required to identify where in the contract between the insurer and the hospital does the contract require that the person physically appear at the hospital, especially in the circumstances where the person's urine *was* tested at the hospital laboratory, even if the person was not there?

5. If the government's claim is that in no case may a hospital send urine samples to a laboratory (a reference laboratory) and then submit a claim for reimbursement, where is this prohibition documented? At the grand jury, the case agent told the grand jurors that a hospital may do this – utilize a reference

9

laboratory – but only "sparingly." Where is the "sparingly" qualification found and how is any hospital or billing company supposed to know when the threshold of "sparingly" has been crossed? (Schwimmer GJ, Exhibit "C", Page 17-18).

This case involves several factual disputes (what laboratory – and where – did the urine testing actually occur? Were the tests medically necessary?) But the defense is entitled, pursuant to Rule 7, Fed.R.Crim.P., to notice of what the specific allegations are that the defense will be confronting. The defense is entitled to notice of what the allegations are so that it can prepare the defense to meet the allegations. At a minimum, in any fraud trial – just as in any perjury case – the defense is entitled to know what is the false statement?

In this case, the discovery provides no clear answer about the allegations. The indictment does not provide an answer regarding whether there was *any* false statement, or whether the essence of the crime is submitting a claim (with no specific false statement) but for which reimbursement is not contemplated by the contract.

There is no burden being placed on the government and it will not suffer any prejudice if it is required to respond to this request for a Bill of Particulars. The defense, on the other hand, cannot address the factual disputes without being informed what are the government's allegation of fraud. The Court, too, will be significantly aided in its resolution of various issues (including, for example, the

*Daubert* issue, and the issue raised in the "104" hearing that is scheduled for February), if the government's allegation(s) of fraud are spelled out with unmistakable clarity.

## MEMORANDUM OF LAW

"The indictment must be a plain, concise and definite written statement of the essential facts constituting the offense charged." *See United States v. Lang*, 732 F.3d 1246 (11th Cir. 2013); *United States v. McGarity*, 669 F.3d 1218 (11th Cir. 2012*); United States v. Schmitz*, 634 F.3d 1247 (11th Cir. 2011); *United States v. Yefsky*, 994 F.2d 885 (1st Cir. 1993); *United States v. ORS, Inc.*, 997 F.2d 628 (9th Cir. 1993).

The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). As the Supreme Court stated in *Russell v. United States*, 369 U.S. 749 (1962):

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. 369 U.S. at 770, 82 S.Ct. 1038.

*United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).

And if the government intends to proceed on the theory that the claims were fraudulent based on the theory that the claim forms had a material omission, the indictment must allege what was omitted and why it was required to be included:

> The indictment failed to sufficiently allege the second element of a section [26 U.S.C.] 7206(1) violation, namely a material falsehood or an omission that amounted to a material falsehood. In this case, the allegation is that Pirro omitted something from a tax return. An omission cannot amount to a false statement, which is an essential element of a section 7206(1) violation, without the crucial background fact that gives rise to the duty to disclose the fact that was omitted. Only the omission of facts required to be reported constitutes a material falsehood. The indictment must therefore allege what made the omission in this case criminal.

*United States v. Pirro*, at 86, 93 (2d Cir. 2000); *see also United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (The government was required to provide a bill of particulars in this mail fraud and RICO case specifying with connection to various insurance fraud counts which insurance claims were fraudulent, and which invoices were allegedly falsified. In this case, the Second Circuit held that the failure to provide this information was reversible error); *United States v. Earnhart*, 683 F. Supp. 717 (W.D.Ark. 1987); *United States v. McCoy*, 492 F.Supp. 540 (M.D.Fla. 1980) (The government in its verified response to the defendant's motion for bill of particulars, has sought to foreclose the need for a bill of particulars by generally apprising the defendant of the evidence upon which the government intends to rely at trial. The defendant has good cause to be unsatisfied with the government's response. The purpose of a bill of particulars is not merely to apprise the defendant

of the voluminous materials and numerous witnesses used in the preparation of the government's case. The defendant is entitled to a bill of particulars setting forth each false and fraudulent pretense and representation described generally in the indictment); *United States v. Velez*, 2008 WL 11454799, at *2 (S.D.Fla. 2008) (In a substantive wire fraud charge, a defendant must be provided notice as to which of his statements the government contends are false or fraudulent). *See, e.g., United States v. McCoy*, 492 F. Supp. 540, 545 (M.D. Fla. 1980) (requiring the government to set forth "each false and fraudulent pretense and representation described generally in the indictment").

Respectfully submitted this 1st day of December, 2021.

/s/ Brian Rafferty
BRIAN RAFFERTY
BRIAN MCEVOY
GRACE ZOLLER
POLSINELLI, P.C.
1201 West Peachtree St., N.W.
Suite 1100 Atlanta, GA 30309
Telephone: (404) 253-6000
Facsimile: (404) 253-6060
Email: bmcevoy@polsinelli.com
Email: brafferty@polsinelli.com
Email: gzoller@polsinelli.com

*Admitted Pro Hac Vice*

/s/ Donald F. Samuel
DONALD F. SAMUEL
Georgia Bar No. 624475
GARLAND, SAMUEL & LOEB. P.C.
3151 Maple Drive, N.E.

Atlanta, Georgia 30305
Telephone: (404) 262-2225
Email: dfs@gsllaw.com

*Admitted Pro Hac Vice*

BRENDAN HERBERT
Florida Bar No. 0076925
POLSINELLI, P.C.
1111 Brickell Avenue, Suite 2800
Miami, FL 33131
Telephone: (305) 921-1820
Email: bherbert@polsinelli.com

*Counsel for Aaron Durall*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AARON DURALL, et al.<br><br>Defendants. | 3:20-cr-86-TJC-JBT |

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served the within and foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

This the 1st day of December, 2021.

/s/ Brian Rafferty
BRIAN RAFFERTY

*Admitted Pro Hac Vice*