UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                    CASE NO.: 3:20-cr-86(S1)-J-TJCJBT

JORGE PEREZ, et al.
_____/

## MOTION TO BAR THE GOVERNMENT FROM INTRODUCING EVIDENCE AT TRIAL THAT AMOUNTS TO A PREJUDICIAL VARIANCE OR CONSTRUCTIVE AMENDMENT OF THE INDICTMENT, OR, IN THE ALTERNATIVE, FOR A CONTINUANCE OF THE TRIAL TO ENABLE DEFENDANT AARON DURALL TO PREPARE FOR THE GOVERNMENT'S BELATED ANNOUNCEMENT OF A NEW THEORY TO PROVE FRAUD AND MONEY LAUNDERING

COMES NOW Defendant Aaron Durall and respectfully moves this Court to prohibit the government from introducing all evidence at trial relating to the government's new theories of fraud and money laundering because introduction of such evidence amounts to a prejudicial variance or constructive amendment of the Indictment, or, in the alternative, for a continuance of the trial to enable the Defendant to prepare for the government's new theories of fraud and money laundering that were improperly introduced on the eve of trial. The government has recently and drastically changed what it purports to be the basis of the fraud and money laundering counts, despite numerous opportunities to previously clarify these bases. If evidence of these new theories were allowed to be presented

to the jury, the Defendant could be convicted based on a theory of guilt that is not the same as the allegations in the Indictment, in violation of his Fifth Amendment right. As such, Mr. Durall seeks an Order that shields the jury from all references (direct or indirect) to these new prejudicial theories.

## **INTRODUCTION**

Throughout the course of the pretrial stages of this case, Defendant Aaron Durall has insisted that the government has failed to identify the fraudulent conduct that is the *corpus delicti* of this case. The defense filed a Motion to Dismiss, a Motion for a Bill of Particulars, and then a renewed Motion for a Bill of Particulars, repeatedly decrying the failure of the government to identify the fraudulent conduct it claims deceived the insurance companies. During various meet and confer sessions, during oral argument in court, and in response to the motions identified above, the government has ridiculed the defense, repeatedly stating that it is readily apparent what the fraud was: billing for tests that were not done at the hospital and that were not medically necessary.

Now, approximately two weeks before trial, the government has announced in a pleading that the government's theory of fraud that it will be present at trial is something entirely different. The fraud was not what was alleged in the Indictment; it was not what was identified in the responses to the defendants' motions; and it was not what the government argued during pretrial court hearings. Now, the government has announced that it will prove its case as to Mr. Durall by acknowledging that at least as to Chestatee Regional Hospital, the urine

samples *were* tested there, but the urine samples were *previously* tested at the private laboratory. (Doc. 595, at 4, n.3). This is an entirely new "manner and means" of committing the alleged fraud not previously disclosed in the Indictment or in any pleading filed with the Court.  Based on the failure to identify this "manner and means" of committing the fraud, the new theory amounts to a constructive amendment of the indictment, or at a minimum a prejudicial variance, and violates the defendant's due process right to be informed of the nature of the allegations.

The defense urges the court to preclude the government from offering such evidence at trial that deviates from the previously-disclosed "manner and means" set forth in the Indictment and in the government's responses to multiple motions for a Bill of Particulars.  In the alternative, the defense urges the court to continue the trial of this case so the defense can prepare to meet and defend against the new allegations.

 In addition to this drastic change to the "manner and means," the government presented a *second* amendment to the indictment on the eve of trial. Now, for the first time, the government has announced that one of the predicate offenses for the money laundering charges is a violation of the Florida state law outlawing the payment of kickbacks. (*Id.*, at 3).  At no time previously has the government identified this state law as the predicate offense for the money laundering charge. Not in response to the request for a Bill of Particulars, not in response to any request to identify the predicate offenses, not in the Indictment

and not in any of the grand jury testimony that has been presented to the defense to date.

A constructive amendment of an indictment occurs when a defendant is convicted based on a theory of guilt that is not the same as the allegation in the indictment. A constructive amendment is different than a "variance"—a "variance" occurs when the facts are somewhat different than the facts set forth in the indictment (for example, the date of the offense, the location of the offense, or the identity of one of the co-conspirators). An example of a constructive amendment would be where the crime of health care fraud is alleged in the indictment to have been committed by forging a doctor's signature, but the evidence at trial focused entirely on kickbacks paid to the doctor. Forging a signature and paying a kickback are both methods of committing health care fraud, but if the indictment alleges one method, that is the method that limits the theory that the government can advance at trial. Otherwise, the defendant is subject to conviction based on a theory that the grand jury did not indict, which violates the Fifth Amendment.

A constructive amendment is a *per se* violation of the Fifth Amendment. A variance taints a conviction if it is prejudicial to the defense. Both the new theory of fraud *and* the identification of a new predicate offense for the money laundering charges amount to a constructive amendment and a prejudicial variance.

For these reasons, the government should be barred from this legerdemain at the last minute. In the alternative, the defense urges the court to continue this case so that the defense can prepare to meet this new allegation of a state law felony

that will serve as the predicate for the money laundering charges.

## FACTUAL BACKGROUND

A.  The Indictment

The superseding indictment alleges that Durall and others obtained ownership and control of rural hospitals "for the purpose of billing false and fraudulent claims for laboratory testing under the hospitals' in network contracts, even though such testing took place at independent laboratories on behalf of patients with no connection to the hospitals." Doc. 180, ¶¶ 37(a), 37(j) and 37(k).  Nowhere in the indictment was it alleged that the urine samples were *first* tested (screening) at the independent laboratory and then tested a second time at the hospital.

In the money laundering counts, there is no mention of any state law felony that will serve as the predicate offense

B.  First Bill of Particulars Request

The defense originally urged the Court to require the government to provide a bill of particulars, because the essential facts of the fraud allegation were not set forth in the indictment. (Doc. 213). Specifically, the defense requested that the government be precise in identifying what false statement was made, or what material omission amounted to the fraud.  (*Id.*, at 4).  Defendants asked with specificity, what the facts were that supported the general claim of "fraud" in the various sub-paragraphs of ¶ 37 in the Indictment. As noted above, there was no suggestion or hint in the indictment that the fraud was the lack of necessity to test the urine sample at the rural hospital after having already conducted the screening

test at the independent laboratory.

The original bill of particulars also requested the disclosure of the underlying fraud that supported the money laundering charges.

C.   The Government's Response to the Defense Request for a Bill of Particulars

The Government declined to provide a Bill of Particulars (or to reveal its theory about the tests performed at the reference lab in a "meet and confer" or to reveal what predicate offenses would support the money laundering allegations).  In its response to the request for a Bill of Particulars, the government boasted that the thirty-nine page, twenty-three count Superseding Indictment clearly articulates the charges against the Defendants, far exceeding the requirements of Fed. R. Crim. P. Rule 7, such that the Defendants are well positioned to prepare a defense and avoid surprise.  (Doc. 227, at 1). The government then offered an overview of the case and proclaimed, "The laboratory tests were billed through the rural hospitals even though very little of the testing took place at the hospitals, and, more critically, despite the fact that none of the individuals whose specimens were tested had any connection to the hospitals." (*Id.*, at 2).  The government then argued that the defendants "falsely represented that the testing had some connection to the hospital when it did not." (*Id.*).  Later, the government explained that the scheme is clearly set forth in the Superseding Indictment in which the Defendants "arranged for urine testing to be performed at one of the independent labs (or occasionally at the hospital lab)." (*Id.*, at 9).

Once again, there was no disclosure or hint that, with regard to Aaron Durall, the "fraud" the government would prove at trial was that the screening tests were performed at Chestatee, but that the screening test had already been done at the laboratory.[1]

D. <u>Government's Response to Defendants' Motion to Dismiss</u>

The defense filed a Motion to Dismiss the indictment because of the failure to satisfactorily allege an offense. (Doc. 212). The government's response to that Motion contained numerous references to the government's theory of the case. See (Doc. 224). In fact, its response addresses both issues raised in this motion: (1) Throughout the response, the government states that the underlying fraud was the submission of claims for reimbursement of testing that was *not* done at the hospital; and (2) the predicate offenses for the money laundering offense (i.e., the Specified Unlawful Activity) was mail and wire fraud:

1. The response starts with the assertion that the defendants failed to reveal that the "out-of-network labs ... actually performed the testing." (*Id.*, at 2).

2. "Defendants omitted the material facts that a substantial amount of testing was actually performed at the out-of-network ... independent laboratories." (*Id.*, at 3).

---

[1] To this day, the defense does not know whether the government will now use this new theory to prove an absence of medical necessity for the hospital testing, as opposed to (or in addition to) the theory that filing a claim for the hospital testing was fraudulent. The government's experts do not mention the fact that the screening test occurred at the laboratory before the urine was sent to the hospital, and therefore the hospital test was not medically necessary.

3. "Defendants' lies [were] that the testing was connected to the rural hospitals." (*Id.*).

4. "The laboratory tests were billed through the rural hospitals even though very little of the testing took place at the hospitals." (*Id.*, at 4).

5. "[The defendants] falsely represented that the testing had some connection to the hospital when it did not." (*Id.*).

6. "Wire fraud and health care fraud are the specified unlawful activities (SUA's) that support the money laundering charges . . . ." (*Id.*, at 11, n.2).

E. <u>The Court Heard Oral Argument on April 27, 2021</u>

During oral argument on the request for a Bill of Particulars, the Court posited that the indictment alleged that the fraud was that the claims were from the hospitals, "when in truth and in fact they were tests that had been performed by independent labs." (Doc. 315, at 94). Counsel predicted that the fraud the government would prove would be a "moving target that will happen at trial." The Court questioned counsel about ¶37(j) in the indictment, asking whether that was not sufficient notice of the fraud. In fact, that paragraph nowhere reveals that the allegation at trial—the government's theory at trial—was that the urine was tested twice.

The Court later denied the request for a bill of particulars (Doc. 372).

F. <u>The Second Request for a Bill of Particulars</u>

On December 1, 2021, the defense renewed its request for a Bill of Particulars, insisting that the government's theory was still elusive, and the actual

fraud was not spelled out anywhere.  (Doc. 449). The government responded with an exasperated tone that the indictment's allegations were clear:

> Aaron Durall attempts to obfuscate what is a straightforward theory of fraudulent misrepresentation: Durall conspired to submit claims to insurance companies that falsely and fraudulently represented that laboratory testing was performed at rural hospitals — and that the hospitals were therefore entitled to reimbursement at rates set out in the hospitals' in-network insurance contracts — when in fact most of the testing was performed at outside laboratories that lacked contracts and that would have received little or no reimbursement had the claims  been truthfully submitted as laboratory claims.

(Doc. 477, at 1).

The government then recited various pleadings and portions of the April 27 transcripts in which it clearly set forth the nature of the fraud.  In not one of those pleadings, however, did the government reveal any allegation that the urine was tested at the laboratory before it was again tested at the rural hospital (*Id.*, at 2–3).  The government emphasized, in bold font, that "The lie is in submitting these claims day after day, week after week, month after month to these insurance companies asking for reimbursement for tests that were not done at the hospital, but that were represented as if they were somehow connected to the hospital." (*Id.*, at 3 (quoting p. 103 of the April transcript)).

Thus, as late as December 2021, the government was still not revealing that the theory at trial would be that the urine was tested at the reference laboratory, and then tested at the rural hospital and that this was fraudulent.  Instead, the government was insisting that the tests "were not done at the hospital."  (*Id.*).

G. Defendants' Disclosure of Test Results at the Rural Hospitals

In Response to the pretrial disclosures by the government about its theory of prosecution, the defense prepared for trial by marshaling evidence and identifying witnesses to show that the screening tests did, in fact, occur at the rural hospitals, including at Chestatee Regional Hospital. This includes newly discovered exculpatory evidence of more than 80,000 test results for urine tests performed at Campbellton-Graceville Hospital (CGH) in Defendants' Status Report. (Doc. 549, at 5). Notably, this exculpatory evidence was never disclosed by the government, although it was found by the defense on a computer server that had been in the government's possession for more than four years.

Perhaps in response to the disclosure of this exculpatory evidence, the government has engaged in a bait and switch, alleging now that the fraud it intends to prove at trial as to Mr. Durall is *not* that there were no screening tests at Chestatee, but that these screening tests were redundant, because screens were also performed at the laboratory. No longer will the government theorize that only "occasionally" were tests performed at the hospital; now the crime is that the tests *were* performed at the hospital, but they were performed needlessly.

**ARGUMENT AND CITATION TO AUTHORITY**

The precedents in this Circuit have uniformly condemned allowing a jury to convict a defendant on the basis of a crime that was not charged in the indictment. *See, e.g., United States v. Madden*, 733 F.3d 1314 (11th Cir. 2013) (finding an improper construction amendment occurred, resulting in plain error, where the

indictment charged the defendant with a § 924(c) offense by knowingly using and carrying a firearm during and in relation to a crime of violence and knowingly possessing a firearm in furtherance of a drug trafficking crime, but the judge instructed the jury that the defendant could be found guilty if he knowingly carried a gun in relation to a drug trafficking offense (which was not what was charged) or if he possessed a gun in furtherance of a drug trafficking offense (which was also incorrect, because he was charged with possessing a gun "in furtherance" of a drug offense, not "in relation to" a drug offense)); *United States v. Lander*, 668 F.3d 1289 (11th Cir. 2012) (holding that a material and prejudicial variance occurred in a mail fraud prosecution of the defendant, a county attorney, where the indictment alleged that he defrauded the citizens of the county by accepting (in essence) a bribe from certain developers and that the developers were falsely told that they had to pay him money as part of a "performance bond.";  at trial, however, the government proceeded on the theory that the defendant defrauded the developers by telling them that their "payments" to him were for certain development costs that he would escrow or to "ensure" that the project obtained approval from the county officials. No developer testified that the defendant said the money was needed to pay for a performance bond. ); *United States v. Narog*, 372 F.3d 1243 (11th Cir. 2004) (holding an amendment of the indictment occurred, and a per se reversal was required, where the indictment charged the defendant with "possession and distribution of pseudoephedrine, knowing and having reasonable cause to believe that the listed chemical would be used to manufacture a controlled

substance, that is, methamphetamine," But, during deliberations, the jury asked if the defendant had to have knowledge or believe the drug would be used to make *specifically* methamphetamine, and the court responded that the government was only required to prove that the defendant possessed the precursor with the knowledge that it would be used to manufacture any controlled substance.); *United States v. Artrip*, 942 F.2d 1568 (11th Cir. 1991) (finding reversible error where the defendant was charged with defrauding a bank by submitting a financial statement of his wife with overstated assets, but at trial, proof was introduced of additional unreported liabilities which was not listed in the indictment as part of the fraud, and the trial court failed to instruct the jury that the only basis for the charge was overstated assets because there was a substantial possibility that the jury convicted the defendant of understating liabilities, but that was not the charge as set forth in the indictment).

The law is equally clear in other Circuits. *See e.g.*, *United States v. Davis*, 854 F.3d 601 (9th Cir. 2017) (holding a constructive amendment of the indictment occurred when the defendant was charged with sexual exploitation of a minor and the indictment alleged that he recruited the child to participate in a sex video, "knowing or in reckless disregard of the fact that the person had not attained the age of 18," but, the trial court instructed the jury that the knowledge requirement of the offense could be satisfied with proof that "the defendant had a reasonable opportunity to observe 'the person,'" because it provided the jury a path to conviction that was not alleged in the indictment); *United States v. Centeno*, 793

F.3d 378 (3rd Cir. 2015) (holding that a constructive amendment of an indictment may occur as a result of a prosecutor's closing argument, and necessitate setting aside the verdict, where, for instance, the defendant was charged with aiding and abetting an assault and, in closing argument, the prosecutor argued that the defendant could be found guilty of aiding and abetting the assault if he drove the person who actually committed the assault away from the scene, which would legally be considered an accessory after the fact because the crime was already completed, not be aiding and abetting an assault).

In this case, the defense has repeatedly urged the Court to require the government to identify the theory of fraud. Repeatedly, the government resisted these entreaties, insisting that the fraud was sufficiently alleged—the testing for which reimbursement was claimed occurred at the laboratory, not at the hospital, and it was therefore fraudulent to submit a claim as if the test occurred at the hospital.  Now, the government has a new theory: the screening tests *were* done at the hospital, but the tests were previously performed at the laboratory, so the hospital tests were redundant and unnecessary.  This is not what the indictment alleges, and not what the government has consistently insisted was the theory of prosecution.  Nor has the government ever previously claimed that it would rely on a state law felony as a predicate for the money laundering allegation.  If given notice of these new theories earlier, Mr. Durall's defense could have identified other witnesses, collected other evidence, or identified experts to rebut these claims.  By springing these new theories on the defense approximately two weeks

before trial amounts to a constructive amendment of the indictment, a variance, and improper gamesmanship that denies Mr. Durall his right to a fair trial.

## **CONCLUSION**

For the foregoing reasons, Defendant Aaron Durall urges the Court to bar the government from introducing evidence that varies from its theory in the prior pleadings (and the Indictment) and to bar the government from introducing a new predicate offense in support of the money laundering charge. In the alternative, the defense urges the Court to grant a continuance of the trial to enable the defense to prepare to defend against these new allegations.

Respectfully submitted this 26th  day of April, 2022.

<div style="margin-left:40%">

*/s/ Brian Rafferty*
BRIAN MCEVOY
BRIAN RAFFERTY
GRACE ZOLLER
BAKER & HOSTETLER LLP
1170 Peachtree Street
Suite 2400 Atlanta, GA 30309
Telephone: (404) 256-8233
Facsimile: (404) 459-5734
Email: bmcevoy@bakerlaw.com
Email: brafferty@bakerlaw.com
Email: gzoller@bakerlaw.com

*Admitted Pro Hac Vice*

*/s/ Lindy K. Keown*
LINDY K. KEOWN
Florida State Bar No. 117888
BAKER & HOSTETLER LLP
SunTrust Center
200 S Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone: (407) 649-4087

</div>

Facsimile: (407) 841-0168
Email: lkeown@bakerlaw.com
*Counsel for Aaron Durall*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 22, 2022, I electronically filed the foregoing with the clerk of the Court by using CM/ECF system which will send a notice of electronic filing to A. Tysen Duva, AUSA and counsel of record.

*/s/Lindy K. Keown*
Lindy K. Keown