## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

                                                           CASE NO. 3:20-CR-86-TJC-JBT

v.

AARON DURALL

_____/

## DEFENDANT AARON DURALL'S MOTION FOR
## JUDGMENT OF ACQUITTAL ON COUNTS 2-6, 9, 10 AND 23

Defendant Aaron Durall, pursuant to Fed. R. Crim. P. Rule 29 and this Court's Order (ECF No. 800), respectfully submits this brief in support of his *ore tenus* motion for judgment of acquittal, which he made at the close of the Government's case-in-chief (Min. Entry, ECF No. 733).

### COUNTS TWO THROUGH SIX

Counts 2 – 6 alleged substantive health care fraud crimes. Counts Two and Three involved claims for reimbursement on December 17, 2015. Count Four involved a claim for reimbursement on December 21, 2015. Count Five involved a claim for reimbursement on March 9, 2016, and Count Six involved a claim for reimbursement on May 10, 2016. All claims were submitted to Blue Cross / Blue Shield.

At trial, four of the beneficiaries testified, but they did not know where any testing was done; they only explained that they never went to the hospital. The

evidence at trial established that each of these five claims involved claims for reimbursement for services at CGH. Yet, there was no evidence that Durall had any involvement in any of these claims. His name does not appear on the claim form; he did not sign any document or participate in any way with the submission of a claim for any of these patients. He did not claim that any test—qualitative or quantitative—was or was not performed at CGH or at Reliance. None of the five patients testified about where their urine was tested or whether the test was a confirmatory or a screening test.

There was substantial evidence at trial that initial screening tests were performed at CGH, RGH and Chestatee. The government introduced no evidence at trial that the tests for which reimbursement was sought in Counts 2 – 6 were not performed at the rural hospital.

In short, other than the evidence that a claim was filed by CGH for reimbursement, the government presented no evidence regarding these specific claims. There is no basis for the government to argue that there was proof that a false claim was filed *at all*, to say nothing of an argument that Durall perpetrated any fraud whatsoever in connection with these claims.

The government did not present any evidence that any of these tests were not medically necessary. No doctor testified about these specific tests or these beneficiaries.

There are three independent and sufficient reasons to conclude that the government failed to satisfy its burden to prove the defendant's guilt beyond a reasonable doubt:

1. The government introduced no proof with regard to these five substantive counts concerning where the lab tests were performed; thus, the truthfulness, or falsity of the claim forms was never proven;

2. The government introduced no evidence to link Durall with the submission of these claim forms, or evidence that he knew that the claim forms were false;

3. The ambiguity of the contractual requirements regarding independent lab testing, and billing BC/BS through the rural hospital, bars a prosecution for fraud.

Rule 29 is not a rule that empowers the trial court to exercise discretion about the propriety of granting a judgment of acquittal. Either the evidence was sufficient to support a reasonable juror's conclusion that the defendant's guilt was established beyond a reasonable doubt, or the evidence was not sufficient. This is a legal question.

A verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996); *see United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018).

Fraud cases present circumstances that require proof that the defendant *knowingly* perpetrated the fraud. While the jury (and thus the court) must consider the defendant's state of mind, the task is not any more difficult than in any criminal case in which the court must evaluate whether the defendant *knew* what was in the car (*United States v. Lopez-Ramirez,* 68 F.3d 438 (11th Cir. 1995)), or *knew* that the jewelry was stolen (*United States v. Lluesma,* 45 F.3d 408 (11th Cir. 1995)), or *knew* that he was a convicted felon (*Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019)). The court must evaluate the evidence and decide whether a reasonable juror could have found beyond a reasonable doubt that a fraud was perpetrated, and the defendant had the requisite *mens rea*. In short, in a health care fraud case, the defendant must be shown to have known that the claims submitted were, in fact, false. *United States v. Sosa,* 777 F.3d 1279 (11th Cir. 2015); *United States v. Medina,* 485 F.3d 1291, 1297 (11th Cir. 2007).

With regard to Counts 2 – 6, the task is not terribly difficult, because the government chose to present no evidence that linked the defendant to those specific claims. Even if the defendant was shown to have joined the conspiracy alleged in Count 1, that does not, *ipso facto* prove that he was a knowing participant in the perpetration of any crime alleged in Counts 2 – 6.

But what makes the Court's job even easier is the fact that the government did not prove that these claims were false in the first place. Thus, the government's

4

failure relates not just to the *mens rea* of the defendant, but to the *corpus delecti* itself: there is simply no proof that the claims were false in the first place.

The court must resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict and ask whether any reasonable juror could have found the defendant guilty beyond a reasonable doubt. "If there is a lack of substantial evidence, viewed in the Government's favor, from which a reasonable factfinder could find guilt beyond a reasonable doubt, the conviction must be reversed." *United States v. Kelly,* 888 F.2d 732, 740 (11th Cir.1989); *see United States v. Willner*, 795 F.3d 1297, 1307 (11th Cir. 2015).

Health care fraud cases are no different than other fraud cases. In *United States v. Ganji*, for example, the Fifth Circuit reversed on sufficiency grounds two defendants' convictions for health care fraud—both their conspiracy convictions and their convictions for § 1347 fraud offenses. 880 F.3d 760 (5th Cir. 2018). Cautioning that "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference," *Pettigrew*, 77 F.3d at 1521, the Fifth Circuit vacated the fraud conviction because—as in this case—there was insufficient proof that the defendant *knew* that the claims were fraudulent. Even if the claims were false, the government was required to prove the defendant's awareness of the falsity of the claim. The fact that the defendant benefited financially

5

from the scheme to defraud does not unburden the government from the obligation to prove that the defendant knew the claims were false.

The Fifth Circuit reversed another health care fraud conviction in *United States v. Nora*, 988 F.3d 823 (5th Cir. 2021). The defendant was employed at a home health care company that was involved in various fraudulent activities, including paying kickbacks to doctors who made referrals and otherwise defrauding Medicare through false claims for reimbursement. *Id.* The defendant, however, was not shown to have been aware that the payment of referral fees was unlawful and therefore his conduct was not "willful" and he was otherwise not proven to have been knowingly involved in the fraudulent activity. *Id.* The conviction on all counts was reversed on sufficiency grounds. Again, the need to evaluate the proof of the defendant's state of mind was no obstacle to deciding that the evidence was insufficient to support a conviction. *Id.*

This Circuit's decision in *United States v. Willner*, 795 F.3d 1297 (11th Cir. 2015), presents another example of a health care fraud prosecution that did not measure up. The case involved a health care fraud conspiracy in which recruiters were paid to send ineligible patients to a facility that was supposedly performing sleep studies. *Id.* The patients were not eligible, they were kept as long as Medicare would pay, then they were discharged and often then re-admitted so that more fraudulent billings could occur. *Id.* One doctor of the doctors who was convicted,

6

Dr. Abreu, was not shown to have had knowledge of the fraudulent activity and her conviction was reversed on sufficiency grounds. *Id.* The Eleventh Circuit emphasized that the defendant was not shown to have signed any false document or submitted any claim that was false. *Id.*

Another health care fraud conviction was condemned in *United States v. Lopez-Diaz*, 794 F.3d 106 (1st Cir. 2015). The defendant knowingly supplied certain patient information to his brother, but unbeknownst to him, the brother was using the information to defraud Medicare. *See id.* The evidence did not support the defendant's conviction under either a conspiracy or aiding and abetting theory. *See id.* Even a willful blindness instruction did not support the theory that the defendant knew that his brother was using the information improperly to defraud Medicare. *See id.*

Yet another health care fraud conviction was reversed on sufficiency grounds in *United States v. Rufai*, 732 F.3d 1175 (10th Cir. 2013). While the defendant's conduct aided the principal's health care fraud offense, the evidence was insufficient to show that the defendant was aware of the crime and thus he could not be convicted of aiding and abetting the health care fraud crime. *See id.* The government's suggestion that the defendant "must have known" the fraud was committing is not a substitute for proof of knowledge that the fraud was being perpetrated. *See id.*

7

The government's burden in health care fraud cases is no different than the burden in other fraud cases. In *United States v. Chandler*, various defendants were prosecuted in this district for engaging in a conspiracy to defraud McDonalds. 388 F.3d 796 (11th Cir. 2004). The Eleventh Circuit reversed the convictions for reasons that are equally applicable in this case. First, it was far from clear that McDonalds was defrauded at all; but second, even if the jury could find that fraud occurred, the evidence did not suffice to prove that the defendants were aware that the money they received was the product of that fraud. *See id.*

Similarly, in *United States v. Parker*, the defendants sold short-term investments and had been told by their employer that the investments were collateralized by zero coupon bonds. 839 F.2d 1473 (11th Cir. 1988). They had no reason to suspect that the investments were in fact fraudulent. *See id.* The sellers' convictions for mail fraud were reversed on sufficiency grounds. *See id.* Like here, even if fraud was proven, the government failed to prove that the defendants were aware of the fraud.

Whether the claim forms were false was hotly contested at trial. This presents yet a third reason why the evidence was insufficient to support a conviction in this case. Not only did the government fail to present evidence that the defendant had any role or knowledge about the submission of the claims in Counts 2 – 6; not only did the government fail to prove that the claims were factually inaccurate (i.e.,

claiming falsely where the testing was done) even according to its theory of what was true and what was false; but the very existence of the ambiguity of what was contemplated by the claims manual and the claim submission forms bars a conviction under one of the two (or more) reasonable interpretations of what would have been permitted under the terms of the contracts. In *United States v. Whiteside,* the defendants' convictions were reversed on sufficiency grounds. 285 F.3d 1345 (11th Cir. 2002). The defendants were charged with making false statements in connection with Medicare reimbursement cost reports and conspiracy to defraud the government. *Id.* In the reimbursement cost reports, the defendants reported that part of their hospital's annual costs included certain interest payments on a note that represented a capital expenditure. *Id.* According to the government, these interest payments should not have been reported as a capital expenditure. *Id.* The jury convicted the defendants. *Id.* The Eleventh Circuit held that it was far from clear what the appropriate definition of a "capital expenditure" is in the context of interest payments for the note. *Id.* Consequently, as a matter of law, the defendants could not be found guilty of making a false statement. *Id.* The court held that, "[i]n a case where the truth or falsity of a statement centers on an interpretive question of law, the government bears the burden of proving beyond a reasonable doubt that the defendant's statement is not true under a reasonable interpretation of the law." *Id.* at 1351.

In short, a prosecution based on an uncertain law or contract violates due process. *United States v. Manapat,* 928 F.2d 1097 (11th Cir. 1991); *United States v. Payne,* 750 F.2d 844 (11th Cir. 1985); *see also United States v. Harra*, 985 F.3d 196 (3rd Cir. 2021) (government must prove at trial that the submission of the defendant was false as a matter of law, not just that one reasonable interpretation of the law supported the view that the submission was false).

This case involved a matter of contract interpretation. Just as the law in *Whiteside* was inherently ambiguous, so, too, were the contracts that were at the heart of this prosecution. And that is giving the benefit of the doubt to the insurance companies which drafted the contracts, and which now claim those contracts did not cover the services that were submitted by the defendants for coverage. A contract dispute cannot morph into a federal crime absent fraud; and a fraud offense requires an intent to defraud, coupled with deceit, either through a false statement or an actionable material omission.

There is nothing in the insurance contracts that explicitly says that only screening tests performed for inpatients or outpatients (as opposed to non-patients) are eligible for payment. In fact, the claim forms submitted for payments by or on behalf of Durall specifically identified the individuals whose urine was tested as "non-patients" through the TOB code 141. It bears repeating: The insurance companies provide a code to the hospitals to identify the status of the person who

10

contributed the specimen and one of the codes ("141") explicitly identifies the individual as a non-patient. That code was placed on the claim form prepared and used by the insurance companies. Perhaps, then, it is no wonder that the government declined to identify any false statement on the claim form in the indictment and the proof at trial similarly failed to prove any false statement in any claim form, including the claim forms that formed the basis for Counts 2 - 6. Moreover, nothing on the claim forms that were prepared for the submission of claims requests any information about where the testing was performed. If this was an important fact for the insurance company, it should have requested that information on the claim form.

The evidence presented by the government in this case failed to prove actual falsity; failed to prove defendant's participation in the perpetration of the fraudulent conduct; and failed to prove that the claim forms were not ambiguous. For these reasons, this Court's obligation under Rule 29 is to grant this post-trial Motion for Judgment of Acquittal.

## COUNTS NINE, TEN AND TWENTY-THREE

Counts 9, 10 and 23 alleged that Durall engaged in a substantive money laundering transaction with the proceeds of specified unlawful activity (wire fraud, health care fraud, and conspiracy to commit health care fraud). The indictment alleges that the defendant conducted the transactions in the Middle District of Florida. The proof at trial, however, failed to prove that the transaction (either the

11

withdrawal or the deposit) occurred in the Middle District of Florida. In reviewing an improper venue claim, the appellate court must determine whether, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict, the government proved by a preponderance of the evidence that the offense took place within the trial district. *United States v. Burroughs,* 830 F.2d 1574 (11th Cir. 1987); *United States v. Stickle,* 454 F.3d 1265, 1271–1272 (11th Cir. 2006).

Venue for a substantive money laundering offense is either where the transaction occurred, *United States v. Cabrales,* 524 U.S. 1, 118 S. Ct. 1772, (1998), or pursuant to 18 U.S.C. § 1956(i), in the district where the unlawful activity occurred *if* the defendant transferred the proceeds out of that district. The indictment only alleged venue under the first method, but in any event, the government failed to prove venue pursuant to either the *Cabrales* method, of the method envisioned by § 1956(i). the Government offered no evidence showing that the transaction was "conducted," "initiated," or "concluded" in the Middle District of Florida. The Government failed to produce any evidence showing where the transactions in each of counts 9, 10 or 23 Count 23 was conducted or its connection to the Middle District of Florida. Therefore, the Government has failed to prove that venue for Counts 9, 10 or 23 is proper in the Middle District of Florida. Thus, the court should grant a judgment of acquittal on these counts.

## CONCLUSION

For the foregoing reasons, Defendant Aaron Durall urges the Court to grant judgments of acquittal on counts 2-6, 9, 10 and 23.

Respectfully submitted this 27th day of July, 2022.

/s/  Donald F. Samuel
Donald F. Samuel
Georgia Bar No. 624475
GARLAND, SAMUEL & LOEB. P.C.
3151 Maple Drive, N.E.
Atlanta, Georgia 30305
404-262-2225
dfs@gsllaw.com

*Admitted Pro Hac Vice*

/s/  Brian Rafferty
Brian T. Rafferty
Brian F. McEvoy
Grace W. Zoller
BAKER & HOSTETLER LLP
1170 Peachtree Street
Suite 2400 Atlanta, GA 30309
Telephone: (404) 256-8233
Facsimile: (404) 459-5734
Email: bmcevoy@bakerlaw.com
Email: brafferty@bakerlaw.com
Email: gzoller@bakerlaw.com
Admitted Pro Hac Vice
*Counsel for Aaron Durall*

/s/ Lindy K. Keown
Lindy K. Keown
Florida State Bar No. 117888
BAKER & HOSTETLER LLP
200 S Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone: (407) 649-4087
Facsimile: (407) 841-0168
Email: lkeown@bakerlaw.com
*Counsel for Aaron Durall*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 27, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/  Lindy K. Keown*
Lindy K. Keown